IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT E. TAGLIALATELA, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A., et al. | : | NO. 16-1319 |

### MEMORANDUM

**BEETLESTONE, J.**                                                                                  **APRIL 4TH , 2016**

Plaintiff Robert E. Taglialatela, Jr. brings this civil action against various defendants arising out of a dispute over a family estate and a related trust. He seeks leave to proceed *in forma pauperis*. The Court will grant plaintiff leave to proceed *in forma pauperis* and dismiss his complaint.

I.      FACTS[1]

In 1998, plaintiff's father Robert E. Taglialatala Sr. created an irrevocable trust for his six children, including plaintiff and his sister Phyllis Galvin, who was named as the trustee. Since plaintiff's father passed away in 2010, plaintiff and his siblings have been engaged in protracted litigation over the trust and their father's estate. Plaintiff brings this action against the following individuals and entities, stemming from their involvement in those disputes: (1) Bank of America, N.A.; (2) Debra Zitomer; (3) R. Douglas Billet; (4) Stacy L. Greenberg, executrix of the estate; (5) Phyllis T. Galvin a/k/a Phyllis Galvin-Moore; (6) Carol Lauchmen; (7) Diane Zabowski, an attorney appointed to represent the estate in certain proceedings in state court; (8) Thomas Posatko, a court-appointed guardian; (9) William O'Day; (10) Edmund Lynch; (11) Natalie Woloshin; (12) Demetrious Kaouris; (13) Thomas A. Boulden; and (14) Timoney Knox.

---

[1] The following facts are taken from the complaint and from publicly available documents from legal proceedings underlying plaintiff's claims.

Although it is unclear, it appears that Galvin, with Zitomer's assistance, filed a petition seeking guardianship over Taglialatela Sr. while he was still alive. Her efforts were unsuccessful and the state court instead awarded guardianship to Thomas Posatko. (Compl. ¶ 20.) Plaintiff alleges that Galvin failed to disclose trust assets in connection with the guardianship proceeding. She also allegedly created two Delaware trusts by means of a power of attorney without the knowledge of plaintiff, his father, or his other siblings.

After Taglialatela Sr. passed away, Galvin allegedly colluded with defendant Lauchman, who appears to have been her attorney, to defraud the estate and misrepresent herself as the estate's executrix. In that regard, she allegedly demanded that seven death certificates be issued to her so that she could make funeral arrangements. She also allegedly arranged for the transfer of funds from the estate—apparently from an account with Bank of America—to pay for the funeral. Plaintiff alleges that Galvin mishandled the funeral and failed to abide by the family's wishes. The complaint implies that there was some litigation over the matter and that the state court appointed defendant Greenberg to serve as executrix of the estate. According to plaintiff, Greenberg "refused to defend the 'Taglialatela estate/trusts' even though she aware the deceased['s] tax identification had been used to open financial accounts [with Bank of America] and conduct 'trust' business." (Compl. ¶ 22.)

In the fall of 2010, plaintiff initiated proceedings in the Delaware Court of Chancery to remove Galvin as the trustee of the 1998 trust. Plaintiff alleges that Bank of America refused to disclose trust documents and information about trust assets in connection with that litigation, and that other defendants have likewise impeded plaintiff's efforts to obtain that information. The Chancery Court ultimately removed Galvin as the trustee, apparently because hostilities among the siblings threatened the efficient administration of the trust. *See Taglialatela v. Galvin*, No.

CIV.A. 5841-MA, 2013 WL 2122044, at *1 (Del. Ch. May 14, 2013).  It appears that Galvin was directed to provide an accounting of her management of the trust and that, after she did so, plaintiff and some of his siblings filed exceptions to the accounting.  *See Taglialatela v. Galvin*, No. CV 5841-MA, 2015 WL 757880, at *1 (Del. Ch. Feb. 23, 2015).  On February 23, 2015, the Master in Chancery issued a final report concluding that Galvin provided "sufficient documentation . . . to audit the accounting and that all of the funds in the Trust have been accounted for."  *Taglialatela v. Galvin*, No. CV 5841-MA, 2015 WL 757880, at *4 (Del. Ch. Feb. 23, 2015).  Upon reviewing the accounting, the Master in Chancery recommended awarding additional funds to plaintiff and his siblings, but noted that a significant amount of the trust resources had been depleted in connection with legal fees incurred as a result of the siblings' contentious litigation efforts.  *Id.* at *6 ("This amount, however, is less than half of the legal fees incurred by the Trust after the former trustee launched a large-scale defense against Robert's efforts to remove her for breach of fiduciary duty and threatened self-dealing. Ironically, as it turns out, there is no evidence that Phyllis breached her fiduciary duty prior to the initiation of this action.").  Plaintiff alleges that the litigation over the trusts and the alleged fraud related to the trusts is ongoing.

      Based on those allegations, plaintiff initiated this civil action.  The gist of his complaint is that Galvin, with the assistance of the other defendants, defrauded his father's estate and trust and/or misappropriated and concealed trust assets.  Plaintiff also alleges that certain defendants gave perjured testimony in connection with litigation related to his family dispute.  He seeks the return of assets allegedly squandered by the defendants and/or compensatory and punitive damages.

## II. STANDARD OF REVIEW

Plaintiff's motion to proceed *in forma pauperis* is granted because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) & (ii) require the Court to dismiss the complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). To survive dismissal for failure to state a claim, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

The Court cannot ascertain a nonfrivolous basis for a plausible federal claim from the allegations of the complaint. To the extent plaintiff references federal criminal provisions, he has not stated a claim because federal criminal statutes generally do not provide for a private civil cause of action. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *Kraemer v. Fontno*, No. CIV.A. 15-1521, 2015 WL 3631847, at *4 n.6 (E.D. Pa. June 11, 2015) ("[F]ederal criminal statutes do not provide a basis for civil claims."). Although the complaint also references federal securities laws and the Dodd-Frank Consumer Protection Act, nothing about the facts alleged by plaintiff suggests that those laws are implicated here or that the defendants violated them. *See Stoneridge Inv. Partners, LLC v. Sci.-*

*Atlanta*, 552 U.S. 148, 156-57 (2008) (explaining that a plaintiff alleging securities fraud must establish "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation").

To the extent plaintiff raises claims under state law, the only possible independent basis for subject matter jurisdiction is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." There is no basis for diversity jurisdiction here because the complaint indicates that the parties are not diverse.[2] In any event, it appears that many of plaintiff's claims have been litigated or are in the process of being litigated in state court, which would be the appropriate forum for plaintiff to assert any outstanding issues with his father's estate and/or trusts.

### IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss plaintiff's complaint. Plaintiff will not be given leave to amend because amendment would be futile, as the Court cannot ascertain a legitimate basis for a federal claim and lacks jurisdiction over plaintiff's state claims. An appropriate order follows, which shall be docketed separately.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

**WENDY BEETLESTONE, J.**

---

[2] Furthermore, under the "probate exception," § 1332 does not authorize federal courts to "to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court." *Three Keys Ltd. v. SR Utility Holding Co.*, 540 F.3d 220, 227 (3d Cir. 2008); *see also Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). Accordingly, to the extent plaintiff is seeking to have this Court administer his father's estate, the Court lacks jurisdiction to do so.